UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

WILLIE JAMISON,

                          Petitioner,          **MEMORANDUM & ORDER**
                                               10-CV-3440 (MKB)

          v.

SUPERINTENDENT, AUBURN
CORRECTIONAL FACILITY,

                          Respondent.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Petitioner Willie Jamison, proceeding *pro se*, brings this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in state custody in violation of

his federal constitutional rights.  Petitioner's claims arise from a judgment of conviction after a

jury trial in the New York State Supreme Court, Nassau County, for rape and sodomy in the first

degree, criminal possession of stolen property in the fifth degree, assault in the third degree and

unlawful imprisonment in the second degree.  Petitioner was sentenced to concurrent determinate

prison terms of twenty-five years for the rape and sodomy convictions and one-year terms for the

stolen property, assault and unlawful imprisonment convictions.  Petitioner appealed his

conviction to the New York Supreme Court Appellate Division, Second Department ("Appellate

Division"), raising seven claims: (1) insufficient evidence as to three of the charges or the verdict

was against the weight of evidence; (2) improper application of New York's rape shield law;

(3) improper admission of "prompt outcry" evidence; (4) improper witness coaching;

(5) improper exclusion of testimony as to Petitioner's good character; (6) improper limiting of

defense counsel's summation; and (7) the imposition of a harsh and excessive sentence.  The

Appellate Division rejected these claims and affirmed Petitioner's convictions. *People v. Jamison*, 857 N.Y.S.2d 623 (App. Div. 2008). On August 19, 2008, the New York Court of Appeals denied leave to appeal. *People v. Jamison*, 11 N.Y.3d 737 (2008). Petitioner moved in the Appellate Division for a writ of error *coram nobis*, claiming that his appellate counsel was ineffective for not arguing on appeal that a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), occurred during jury selection. On September 22, 2009, Petitioner's writ of error was denied. *People v. Jamison*, 885 N.Y.S.2d 428 (App. Div. 2009). In the instant application, Petitioner raises five of the seven claims raised on direct appeal as well as a sixth claim: that the People's challenge to the only African-American male prospective juror violated his rights under *Batson*. For the reasons set forth below, the petition is denied.

## I. Background

### a. Incident and arrest

The evidence at trial established that on March 22, 2003, at approximately 3:45 AM, in Nassau County, New York, the twenty-year-old complainant was stopped at a traffic light when Petitioner got into her car. (Trial Tr. ("Tr.") 426–28, annexed to Resp't Decl. and Mem. of Law in Opp'n ("Resp't Opp'n") as Docs. 11–27, Docket Entry No. 9; Resp't State Br. 2–3, annexed to Resp't Opp'n as Ex. 3.) Petitioner asked the complainant to drive him to the train station, and the conversation between them was initially amiable. (Tr. 430.) Petitioner subsequently redirected her to drive to a parking lot on the way to the train station. When the car arrived at the parking lot, Petitioner would not allow the complainant to leave the car and he removed her pants and underwear, put his mouth on her vagina, put his penis into her vagina, and choked her, punched her repeatedly, bit her and threatened to kill her. (Tr. 430–43; Resp't State Br. 3–4.)

Petitioner subsequently left the car, taking the complainant's cell phone with him. (Tr. 446; Resp't State Br. 5.) As a result of the assault, the woman's eyes were swollen partially shut, her neck and hand were bruised and the orbital bone below her left eye was fractured. (Tr. 1199–1202, 1216–17; Resp't State Br. 6–7.)

### b. Charges and trial

On the same day as the assault, Petitioner was arrested for possession of the stolen cell phone. After receiving *Miranda* warnings, he was questioned at the local police precinct where he gave a statement admitting that he had hit and had sex with the complainant.[1] (Tr. 999–1011, 1416–1424; Resp't State Br. 9–10.) Petitioner was charged with sodomy in the first degree, rape in the first degree, sexual abuse in the first degree, criminal possession of stolen property in the fifth degree, assault in the third degree and unlawful imprisonment in the second degree. (Resp't Opp'n ii.)

At trial, the complainant testified that at approximately 1:00 AM on Saturday March 22, 2003, she went to Bogart's Bar in Nassau County, New York, with a friend, Jacqueline Gonzalez, and two cousins, where they danced and drank several alcoholic drinks. (Tr. 423–25.) At about 3:00 AM, they left the bar, and while en route to see her former boyfriend, the complainant drove Gonzalez and one of her cousins home. (Tr. 425–26, 514–15.) At approximately 3:45 AM, after the complainant had dropped off Gonzalez and her cousin, she was stopped at a traffic light when Petitioner approached her car, asked her to take him to the train station, took a seat on the passenger side of her car without her permission and prevented

---

[1] His statement at the precinct was different from his trial testimony. (Tr. 1010–11, 1407–12.)

her from leaving the car.  (Tr. 426–29, 544–46, 554, 558–59, 561.)  Petitioner then directed her

to drive to a parking lot at Northeast Park in Freeport, New York.  (Tr. 432, 977–78.)  She

testified that Petitioner closed the door each time she tried to get out of the car, (Tr. 434–35, 605,

610), touched and put his tongue in her vagina, (Tr. 438–39, 441–42, 471, 665, 668, 683), put his

penis in her vagina, (Tr. 443, 471–72, 682, 687), punched her repeatedly in the face, (Tr. 435,

437–38, 605–09, 615–16), choked her, (Tr. 620), threatened to kill her, (Tr. 617–18), and bit her

hand, (Tr. 614–15).

Jahaira Galvin, the complainant's best friend, testified that the complainant telephoned

her at 5:00 AM and told her that a man had entered her car and beaten her up.  (Tr. 748–49.)  The

complainant went to Galvin's home, and upon seeing that the complainant was disheveled,

rattled and had bruises on her face, Galvin took her to the police station.  (Tr. 753.)  Later that

day, the complainant told Galvin that she had been raped and played a cell phone message that

had recorded part of the incident for Galvin and Gonzalez.  (Tr. 756, 783, 789.)

Gonzalez testified that she went to the bar with the complainant at approximately

1:00 AM, that the complainant dropped her off at her home at approximately 3:30 AM, that she

accompanied the complainant and Galvin to the Freeport police station, that she observed the

complainant's injuries at this time, and that she saw the complainant again later that same day at

which time the complainant told her she had been raped and played the cell phone recording.

(Tr. 833–39, 842–44.)

Diana McCauley, a paramedic, testified that on March 22, 2003, the complainant had

injuries to her face, extreme swelling around her eyes and fractures in the facial area, and she

reported that she had been beaten and sexually assaulted.  (Tr. 928–29, 949–51.)  In a

4

pre-hospital report, McCauley noted that the complainant had been sexually assaulted without full penetration and subjected to oral sexual assault.  (Tr. 947.)

Dr. David Menges testified that he examined the complainant at the hospital and took samples for the sexual assault evidence collection (the "Rape Kit").  He testified that the complainant had bruised eyes, one of her eyes was partially swollen shut, her left hand and neck were bruised, and there was a bite mark on her hand and a substance on her forearm resembling gum.  (Tr. 1200–04.)  There were no signs of vaginal trauma.  (Tr. 1205).  The Rape Kit included oral swabs and smears, the complainant's underwear, fingernail scrapings, head and pubic hairs, anal and vaginal swabs and smears, dried secretions found on the complainant's arm and shirt and a buccal specimen. (Tr. 1202–03, 1205–07).

Dr. Christopher Zieker, a resident in ophthalmology, testified that he examined the complainant on the same day and noted swelling and bruising around her eyes and found that the orbital bone below her left eye was fractured.  (Tr. 1223–1225.)  Analysis of the Rape Kit indicated that Petitioner was a minor contributor to the mixed sample from the vaginal swab. (Tr. 1309–10; 1313–14; 1316–18).

Petitioner testified that the sex was consensual and the assault only happened because Petitioner "started freaking out and hitting" him after her phone rang.  (Tr. 1402–12.)

c.  **Jury verdict and sentence**

On May 11, 2004, Petitioner was found guilty of sodomy in the first degree, rape in the first degree, criminal possession of stolen property in the fifth degree, assault in the third degree and unlawful imprisonment in the second degree.  (Tr. 1614–1616; Resp't State Br. 15.)  On June 29, 2004, he was sentenced, as a second felony offender, to concurrent determinate terms of

imprisonment of twenty-five years and five years of post-release supervision on the sodomy and rape convictions, and concurrent terms of one year each on the remaining convictions. (Sentencing Mins. 21, 25, annexed to Resp't Opp'n as Doc. 10; Resp't State Br. 15.) He was also assessed fees and a permanent order of protection was entered on behalf of the complainant. (Sentencing Mins. 26; Resp't State Br. 15.)

### d. Appeals

Petitioner appealed his judgment of conviction to the Appellate Division claiming; (1) insufficient evidence or the verdict was against the weight of evidence; (2) improper application of New York's rape shield law; (3) improper admission of "prompt outcry" evidence; (4) improper witness coaching; (5) improper exclusion of testimony as to his good character; (6) improper limiting of defense counsel's summation; and (7) an excessive sentence. (Pet'r State Br. 25–61.) On April 29, 2008, the Appellate Division affirmed the judgment of conviction and sentence. *Jamison*, 857 N.Y.S.2d at 623. The Appellate Division found that the insufficient evidence claim had not been preserved for appellate review and concluded that the evidence was, "in any event," legally sufficient to establish Petitioner's guilt beyond a reasonable doubt. *Id*. The Appellate Division also found that the trial court properly exercised its discretion in precluding cross-examination of the complainant concerning her sexual history with her boyfriend and that the sentence was not excessive. *Id*. The Appellate Division held that Petitioner's remaining claims were either "without merit or do not require reversal." *Id*. On August 19, 2008, the New York Court of Appeals denied leave to appeal. *Jamison*, 11 N.Y.3d at 737.

### e. Writ of error *coram nobis*

On March 30, 2009, Petitioner moved for a writ of error *coram nobis* claiming that he was denied the effective assistance of appellate counsel because his appellate counsel did not argue on appeal that a *Batson* violation occurred during jury selection when the sole African-American male prospective juror was dismissed. (Resp't Opp'n ¶¶ 14–16.) On September 22, 2009, the Appellate Division held that "appellant has failed to establish that he was denied the effective assistance of appellate counsel." *Jamison*, 885 N.Y.S.2d at 428. Petitioner did not seek leave to appeal from the decision.

On July 21, 2010, Petitioner filed the instant petition, claiming that (1) there was insufficient evidence or the verdict was against the weight of evidence; (2) he was denied a fair trial due to the improper application of New York's rape shield law; (3) he was denied a fair trial due to the improper admission of "prompt outcry" evidence; (4) he was denied a fair trial due to improper witness coaching; (5) the trial court improperly excluded testimony as to his good character; and (6) the People's challenge to the only African-American male juror violated his rights under *Batson*. (Pet. 5–9, 21–22, Docket Entry No. 1.)

## II. Discussion

### a. Standard of review

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the

merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Johnson v. Williams*, 568 U.S. ---, ---, 133 S. Ct. 1088, 1091 (2013); *Lafler v. Cooper*, 566 U.S. ---, ---, 132 S. Ct. 1376, 1390 (2012).  This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  As the Supreme Court recently stated, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods v. Donald*, --- U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015) (per curiam).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412  (2000);  *Woods*, --- U.S. at ---, 135 S. Ct. at 1376.  A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case.  *Williams*, 529 U.S. at 412–13.  In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The decision must be "objectively unreasonable."  *Id.*

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, *see* 28 U.S.C. § 2254(a), and "does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal quotation marks omitted).  In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**b.   Timeliness of the petition**

AEDPA imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment.  28 U.S.C. § 2244(d)(1).  The one-year period runs from the date on which one of the following four events occurs, whichever is latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D); *see Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (interpreting § 2244 to apply "to the general run of habeas cases . . . when those cases had been filed after the date of the Act").  A judgment of conviction is "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the respective state's highest

court and either completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or the expiration of time to seek certiorari before the United States Supreme Court. *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003); *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001) (holding that petitioner's judgment of conviction becomes final upon "either the completion of certiorari proceedings in the United States Supreme Court, or — if the prisoner elects not to file a petition for certiorari — the time to seek direct review via certiorari has expired").

Petitioner's direct appeal concluded on August 19, 2008, when the New York Court of Appeals denied his request for leave to appeal to that court. *Jamison*, 11 N.Y.3d at 737. Thus, Petitioner's conviction became final ninety days later, on November 17, 2008, when the time to seek a writ of certiorari in the Supreme Court of the United States expired. *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009). Pursuant to the one-year limitations rule, this petition should have been filed on or before November 17, 2009. On March 30, 2009, 133 days into the AEDPA one-year limitations period, Petitioner filed the writ of error *coram nobis* in the Appellate Division, (Resp't Opp'n at vi (citing Pet'r *Coram Nobis* Appl., annexed to Resp't Opp'n as Ex. 5)), and on September 22, 2009, the Appellate Division denied the writ of error *coram nobis*, *Jamison*, 885 N.Y.S.2d at 428. The AEDPA limitations period was tolled while Petitioner's writ of error *coram nobis* was pending,[2] that is, from March 30, 2009 to September

---

[2] Petitioner did not seek leave to appeal the denial of his *coram nobis* petition. The Court finds no authority for statutory tolling of the AEDPA limitations period during the thirty days in which Petitioner "could have filed" leave to appeal. *See* N.Y. Crim. Proc. Law §§ 450.90(1); 460.10(5)(a); *see generally Shomo v. Maher*, No. 04-CV-4149, 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005) (Pursuant to a 2002 Amendment, petitioner could have appealed the Appellate Division's denial of his petition for a writ of error *coram nobis*, but did not, thereby failing to exhaust his ineffective assistance of appellate counsel claim.). Thus, the

22, 2009.  *See* 28 U.S.C. § 2244(d)(2) (If a "properly filed" application for state post-conviction or other collateral review with respect to the judgment of conviction was "pending" at any time during that one-year period, the time during which this application was pending does not count toward the one-year period.); *Smith v. McGinnis*, 208 F.3d 13, 16 (2d Cir. 2000) (per curiam). On May 12, 2010, 232 days later, the one-year limitations period expired.  The instant petition was filed with the Court on July 19, 2010 and is thus untimely and barred by 29 U.S.C. § 2244(d), unless the one-year limitations period was tolled.

The AEDPA one-year limitations period is an affirmative defense, not a jurisdictional bar, and it is therefore the respondent's burden to plead it.  *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000).  Nevertheless, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition," *Day v. McDonough*, 547 U.S. 198, 209 (2006); *see also Wood v. Milyard*, 566 U.S. ---, ---, 132 S. Ct. 1826, 1830 (2012), provided that the parties are given "fair notice and an opportunity to present their positions," *Day*, 547 U.S. at 201, and that the government has not deliberately waived the statute of limitations defense, s*ee Wood*, 566 U.S. at ---, 132 S. Ct. at 1830.  A district court must "determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time-barred."  *Day*, 547 U.S. at 210 (citation and internal quotation marks omitted).

Because Respondent does not raise the untimeliness of the petition, the Court will address the merits of Petitioner's claims.  *See Changar v. United States*, No. 10-CV-3123, 2013 WL

---

petition was only "pending" for the purpose of 28 U.S.C. § 2244(d)(2) until the Appellate Division denied Petitioner's motion on September 22, 2009.  However, even if the limitations period were tolled during the thirty additional days that Petitioner could have sought leave to appeal, the petition would still be untimely by more than one month.

2444180, at *3 (E.D.N.Y. June 5, 2013) (denying habeas petition on the merits, notwithstanding that it was filed eighteen months after the expiration of the AEDPA statute of limitations period and stating that "given the length of time this petition has been pending, and the fact that the government did not raise a statute of limitations defense . . . the Court must give the parties fair notice and an opportunity to present their positions prior to *sua sponte* dismissing the petition as time barred, the interests of justice will be better served by addressing the merits of the petition"); *Azaz v. Artus*, No. 09-CV-3857, 2012 WL5289519, at *4 (E.D.N.Y. Oct. 19, 2012) (same, petition two days late); *Rosario v. Bennett*, No. 01-CV-7142, 2003 WL 151988, at *2–3 (S.D.N.Y. Jan. 21, 2003) (same, petition three days late).[3]

### c.    Legal sufficiency of the evidence and weight of evidence

Petitioner's first claim is that his guilt was not proven beyond a reasonable doubt and the verdict was against the weight of the evidence.

### i.    Sufficiency of the evidence

Petitioner argues, regarding his convictions for rape, sodomy and unlawful imprisonment,[4] that the People failed to prove forcible compulsion because the evidence showed that the parties engaged in consensual sex.  (Pet. 5.)  Respondent argues that Petitioner's claim is procedurally barred and that even if his claim were properly before the Court, the evidence was legally sufficient to establish his guilt beyond a reasonable doubt.  (Resp't Opp'n 4–10.)

---

[3]  The Clerk of Court is directed to send Petitioner the attached copies of all the unreported cases cited herein.

[4]  Petitioner does not challenge the sufficiency of the evidence for his convictions for criminal possession of stolen property in the fifth degree or assault in the third degree.

Under New York law, in order to preserve a challenge to the sufficiency of the evidence, "a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." *People v. Hawkins*, 11 N.Y.3d 484, 491 (2008) (quoting *People v. Gray*, 86 N.Y.2d 10, 19 (1995)). Petitioner did not raise a claim of legal insufficiency at trial. Petitioner moved for a trial order of dismissal on all counts, both at the close of the state's case and after the defense rested, but his was a generalized motion arguing that the People had failed to meet its burden on all counts; Petitioner did not specify that the prosecution had failed to prove force. (Tr. 1357–62, 1445–46). The Appellate Division concluded that Petitioner failed to preserve his claim pursuant to New York's contemporaneous objection rule, which is codified at New York Criminal Procedure Law section 470.05.[5] *Jamison*, 857 N.Y.S.2d at 623. The Appellate Division also found that, irrespective of that error, Petitioner's claim was without merit. *Id.*

---

[5] New York's contemporaneous objection rule provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2).

### 1.    Procedural bar

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999)).

It is well-settled that New York's contemporaneous objection rule is an adequate and independent ground that bars federal habeas review. *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("[T]he contemporaneous objection rule provides an independent state-law ground for barring federal habeas review."); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *see also Wright v. Lee*, No. 12-CV-6140, 2013 WL 1668266, at *2 (E.D.N.Y. April 17, 2013) ("It is well settled that New York's contemporaneous objection rule . . . is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review."); *Williams v. Ercole*, No. 09-CV-0363, 2011 WL 4944268, at *6 (E.D.N.Y. Oct. 12, 2011) (finding adequate and independent state law grounds where the petitioner failed to raise his legal insufficiency claim at trial).

Here, Petitioner's claim that the evidence was legally insufficient is procedurally barred because his failure to preserve his claim by raising a contemporaneous objection at trial was an adequate and independent state law ground upon which the Appellate Division rested its decision.

The fact that the Appellate Division proceeded to evaluate the merits of Petitioner's claim does not eliminate the procedural bar. In addition to specifically stating that Petitioner's legal insufficiency claim was "unpreserved for appellate review," the Appellate Division held that "[i]n any event" the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Jamison*, 857 N.Y.S.2d at 623.

"[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *Edwards v. Rock*, No. 09-CV-1387, 2013 WL 80176, at *10 (E.D.N.Y. Jan. 7, 2013); *Young v. New York*, No. 11-CV-0110, 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)). Accordingly, despite the alternative holding by the Appellate Division that the evidence was "legally sufficient to establish Petitioner's guilt beyond a reasonable doubt," *Jamison I*, 857 N.Y.S.2d at 623, Petitioner's sufficiency of the evidence claim is nevertheless procedurally barred.

Although a federal court may review a claim that is procedurally barred under certain circumstances, Petitioner has not alleged circumstances justifying such review.  A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error . . . .  The bar is not, however, unqualified . . . .  [T]he Court has recognized a miscarriage-of-justice exception.'" (citations omitted)); *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("When a petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" (quoting *Coleman*, 501 U.S. at 750)).

"The cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *see also Maples v. Thomas*, 565 U.S. ---, ---, 132 S. Ct. 912, 922 (2012); *Lawson v. McGinnis*, No. 04-CV-2345, 2013 WL 789173, at *9 (E.D.N.Y. Mar. 1, 2013).  Prejudice is established when a petitioner is able to show that the alleged errors at trial resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112 (quoting *United States v. Frady*, 456 U.S. 152, 170

(1982)); *see also Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 265 (E.D.N.Y. 2014); *White v. Rock*, No. 10-CV-5163, 2013 WL 1767784, at *20 (E.D.N.Y. Apr. 22, 2013). A fundamental miscarriage of justice arises when a petitioner "is actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also McQuiggin v. Perkins*, 569 U.S.---, ---, 133 S. Ct. 1924, 1927 (2013) ("[The] fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))); *Blount v. Napoli*, No. 09-CV-4526, 2012 WL 4755364, at *14 (E.D.N.Y. Oct. 5, 2012).

Petitioner has not argued that there was cause for the procedural default or actual prejudice. Petitioner has also made no claim of actual innocence. Therefore, failure to review Petitioner's claim will not result in a miscarriage of justice. The Court is procedurally barred from reviewing Petitioner's legal insufficiency claim.

## 2. Merits

Even if Petitioner's legal insufficiency claim was not procedurally barred from review, it would nevertheless be denied as meritless. Petitioner claims that the evidence was insufficient to support a finding of forcible compulsion because the sexual acts were consensual. (Pet. 5.) As discussed below, the evidence adduced at trial was sufficient to sustain the jury's verdict on each charge.

In reviewing an insufficiency of the evidence claim a court must consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

17

could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith*, 565 U.S. ---, ---, 132 S. Ct. 2, 6 (2011) (per curiam) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) ("[T]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor."). A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." *Mi Sun Cho*, 713 F.3d at 720; *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000). "A habeas petitioner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (citing *Jackson*, 443 U.S. at 324); *Arena v. Kaplan*, 952 F. Supp. 2d 468, 479 (E.D.N.Y. 2013); *Prince v. Lee*, No. 10-CV-5306, 2011 WL 1533486, at *4 (E.D.N.Y. Apr. 22, 2011). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 3 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *Mendez v. Connelly*, No. 09-CV-234, 2012 WL 1567184, at *1–2 (E.D.N.Y. May 2, 2012). Furthermore, a court reviewing a habeas petition must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011) (quoting *Jackson*, 443 U.S. at 324 n.16); *see also Dixon v. Miller*, 293 F.3d 74, 79 (2d Cir. 2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause of the Fourteenth Amendment, which guards against

convicting a defendant without proof beyond a reasonable doubt on each element of his crime.");

*Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999) ("A federal court must look to state

law to determine the elements of the crime.").

Petitioner was convicted under New York Penal Law sections 130.50(1) (sodomy),

130.35(1) (rape) and 135.05 (unlawful imprisonment).  Under New York Penal Law section

130.50(1), a defendant is "guilty of sodomy in the first degree when he or she engages in deviate

sexual intercourse with another person . . . [b]y forcible compulsion."  N.Y. Penal Law

section 130.50(1).  Under New York Penal Law § 130.35(1), a defendant is "guilty of rape in the

first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible

compulsion."  N.Y. Penal Law § 130.35(1).  Under New York Penal Law section 135.05, a

defendant is "guilty of unlawful imprisonment in the second degree when he restrains another

person."  N.Y. Penal Law § 135.05.

Petitioner argues that the evidence showed that the sexual acts were consensual, and

therefore, the People failed to prove the forcible compulsion elements of rape in the first degree

and criminal sexual act in the first degree.[6]  (Pet. 5).  Petitioner relies on his own testimony that

the sexual acts were consensual and the medical evidence offered by the prosecution which,

Petitioner claims, indicates the sexual acts were consensual.  (*Id.*)  Petitioner argues that although

"Dr. Menges examined for a possible sexual assault, he found no signs of vaginal trauma, no

distress."  (*Id.*)  Petitioner also argues that he "apologized and accepted responsibility for the

---

[6] While Petitioner asserts that the evidence of all three crimes was insufficient, he only specifically addresses rape and sodomy, which are the two crimes involving forcible compulsion.

assault and property charges" and that the complainant "drove [him] in her car after this alleged rape was over rather than run or scream for help." (*Id.*)

Respondent argues that the evidence was "legally sufficient to establish [Petitioner's] guilt of rape in the first degree, sodomy in the first degree, and unlawful imprisonment." (Resp't Opp'n 9.) Respondent states that the evidence "showed that [Petitioner] savagely beat the victim in order to overcome her resistance to his sexual advances and to engage in sexual intercourse with her and place his mouth on her vagina" and "that the victim tried to escape from her car and get away from [Petitioner] but [he] prevented her from doing so by repeatedly shutting the car door and punching and choking her." (*Id.* at 10.)

When the Appellate Division reviewed Petitioner's legal insufficiency claim, it not only dismissed it as "unpreserved for appellate review" but also addressed the merits and concluded that the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Jamison*, 857 N.Y.S. 2d at 623. The Appellate Division added, "[m]oreover, resolution of issues of credibility is primarily a matter to be determined by the factfinder, which saw and heard the witnesses, and its determination should be accorded great deference on appeal." *Id.*

### A. Rape in the first degree

New York Penal Law section 130.35(1) provides that a defendant is guilty of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion. N.Y. Penal Law § 130.35. Here, the evidence was sufficient to establish that Petitioner engaged in sexual intercourse with the complainant by forcible compulsion. The People established both elements through the complainant's testimony that: (1) Petitioner put his penis in her vagina, (Tr. 443, 471–73, 682, 687–88), and (2) she was locked in the car, bitten,

punched, choked, restrained and threatened with death, (Tr. 435–40, 614, 617–18, 629, 645–47, 652–53, 679–81). This testimony was supported by other witnesses, including Petitioner. Petitioner admitted to putting his penis into the complainant's vagina, (Tr. 1409–10), and hitting the complainant several times and grabbing her around the neck, (Tr. 1411–12). He testified that he hit her only after she "freaked out" after receiving a phone call and started hitting him after they had consensual sex. (Tr. 1411–1412). On the day of his arrest, Petitioner told the police:

> I hit her face. I don't remember how many times. She told me to get out of the car. I remember that I took her pants and her underwear off. I pulled them down to just above her knees. I pulled my head between her legs and licked her vagina. I didn't do that very long. I got on top of her and tried to put my penis in her vagina but it only went in a little because I couldn't keep my penis erect. [She] was a little upset.

(Tr. 1010–11.) Photographs of the bruised and battered complainant were introduced into evidence and the jury was apprised that, as a result of the beating Petitioner inflicted on the complainant, the bone beneath the complainant's left eye was fractured. (Tr. 1225.) Doctors Menges and Zieker both examined the complainant on the day of the incident and they both testified that her eyes were very bruised and partially swollen and there was a bruise on her hand that appeared to be a bite mark; and that further tests showed a fracture of the orbital bone beneath the complainant's left eye. (Tr. 1176, 1199–1202, 1217–18, 1224–25.) A detective who saw the complainant the day of the incident also testified about the bruises on her face and the bite mark on her left hand. (Tr. 979.)

Based on the testimony of Petitioner, the complainant, the medical professionals and police officers who interacted with and examined the complainant, and photographs of her injuries that were introduced at trial, a rational jury could have concluded that the sexual intercourse was by forcible compulsion and not, as Petitioner argued, consensual. Petitioner's

defense that the encounter was consensual was apparently rejected by the jury. Moreover, in reviewing the petition, the Court must assume that all conflicting inferences were resolved in favor of the prosecution. *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 6 ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)); *Policano v. Herbert*, 507 F.3d 111, 117 (2d Cir. 2007) (same). Viewed in the light most favorable to the prosecution, the evidence supporting forcible compulsion is sufficient and the state court's decision regarding the sufficiency of the evidence was not contrary to, or an unreasonable application of, clearly established Federal law.

## B. Sodomy in the first degree

New York Penal Law section 130.50(1) provides that a defendant is guilty of sodomy in the first degree when he "engages in deviate sexual intercourse with another person . . . [b]y forcible compulsion." N.Y. Penal Law § 130.50.[7] The People offered testimony that Petitioner's tongue made contact with the complainant's vagina from both the complainant, (Tr. 441–42, 665), and Petitioner, (Tr. 1010–11, 1409). As discussed above, the evidence of forcible

---

[7] Effective November 1, 2003 (after the commission of Petitioner's criminal acts and his indictment, but before his trial), the word "sodomy" was replaced with "criminal sexual act" and the phrase "deviate sexual intercourse" with "oral sexual conduct or anal sexual conduct." N.Y. Penal Law § 130.50; *see* 2003 N.Y. Sess. Laws ch. 264 § 20; *People v. Ogborn*, 865 N.Y.S.2d 746, 747 (App. Div. 2008). Under the version of the statute in effect at the time Petitioner engaged in the relevant conduct and was charged, "deviate sexual intercourse" included oral sex. *See, e.g.*, *People v. Plaisted*, 767 N.Y.S.2d 518, 520 (App. Div. 2003) ("'Deviate sexual intercourse' means sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva." (quoting N.Y. Penal Law § 130.00(2) (2000))); *People v. Rogner*, 697 N.Y.S.2d 363, 364 (App. Div. 1999).

compulsion was more than adequate for the jury to find Petitioner guilty of sodomy in the first degree. The state court's decision on Petitioner's legal insufficiency claim as to the sodomy charge was not contrary to or an unreasonable application of clearly established federal law.

### C. Unlawful imprisonment in the second degree

New York Penal Law section135.05 provides that a defendant is guilty of unlawful imprisonment in the second degree when he or she restrains another person. N.Y. Penal Law § 135.05. The complainant testified that she was not free to leave her car during the attack. (Tr. 432–35.) Petitioner directed her to park her car and when she tried to restart the car, Petitioner turned the car off. (Tr. 432–33, 592–95.) The door was locked and when she tried to get out, Petitioner physically restrained her from doing so. (Tr. 435, 437–38, 440, 597, 601, 605, 612–13.) The jury did not credit Petitioner's argument that the assault must have been consensual and that the complainant was free to leave because, after the assault, the complainant drove Petitioner in her car and did not scream for help. The evidence was more than adequate for the jury's verdict. The state court's decision on Petitioner's legal insufficiency claim as to the unlawful imprisonment charge was not contrary to or an unreasonable application of clearly established federal law.

Therefore, Petitioner's insufficiency of the evidence claim is procedurally barred and is without merit. The evidence was sufficient to support the jury's verdict on each of these charges, and the Appellate Division's decision was not contrary to or an unreasonable application of clearly established federal law.

### ii. Weight of the evidence

Petitioner also seeks relief based on the claim that his conviction was against the weight of the evidence because of the alleged failure to prove forcible compulsion; Petitioner again argues that the "sexual encounter was consensual." (Pet. 5.) Petitioner's weight of the evidence argument is not cognizable. Unlike Petitioner's sufficiency of the evidence claim, which is based on the due process clause of the Fourteenth Amendment, a weight of the evidence claim is a state law claim grounded in New York Criminal Procedure Law section 470.15(5). *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 372 (E.D.N.Y. 2013) (citing *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011)); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Petitioner is therefore not entitled to federal habeas corpus relief on this ground. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (noting that habeas corpus review is not available where there is simply an alleged error of state law).

### d. Evidentiary rulings by the trial court

Petitioner challenges three evidentiary rulings by the trial court: (1) its application of the rape shield law to redact medical records and to preclude questions regarding the complainant's sexual history and sexual activity the night of the incident; (2) its application of the prompt outcry rule to allow hearsay testimony by the complainant's friends; and (3) the trial court's limitation of Petitioner's wife's testimony as to his good character.

The Supreme Court has made clear that "habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). Thus, a petitioner

24

seeking habeas relief based upon an error of state evidentiary law must show that: (1) the state court's evidentiary ruling was an error of "constitutional magnitude," that is, it was both (a) an error under New York state law and (b) an error that denied him the "constitutional right to a fundamentally fair trial;" and (2) "the constitutional error was not harmless." *Perez v. Phillips*, 210 F. App'x 55, 57 (2d Cir. 2006) (internal citations omitted); *see also Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (Federal habeas corpus relief does not lie for errors of state law, but "[a] federal habeas court may, of course, review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a 'fundamentally fair trial.'" (quoting *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004))).

In order to satisfy the second prong, that the error of constitutional magnitude was not harmless, the erroneously admitted evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *McKinnon*, 422 F. App'x at 73 (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)); *Lyons v. Girdich*, No. 02-CV-3117, 2003 WL 22956991, at *10 (E.D.N.Y. Oct. 15, 2003) ("Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993))). The Court addresses each of Petitioner's evidentiary claims below.

### i. Rape shield law

Petitioner argues as to the trial court's rulings under the rape shield law that:

> The [trial] Court improperly applied the Rape Shield Law to bar
> [Petitioner] from questioning complainant although another man's

> semen was found [on her arm]. The other man's semen stain was paramount because it showed complainant lied about another sexual encounter she had the same night. ([Tr.] 506.) The medical records would have proven complainant's claim concerning the last time she had sex before the incident was untrue. Coupled with the semen stain, the records would have shown complainant had lied about the events at the bar and would have been incredible. The jury would have learned that complainant hid her sexual actions at the bar that night, headed to her boyfriend [—] the ex-boyfriend's [—] for more sex, and that she had consensual sex with [Petitioner] and still went to her ex-boyfriend[']s house at the end of the night. ([Tr.] 512, 513.)

(Pet. 6.) In essence, Petitioner argues that the evidence excluded by the trial court under New York's rape shield law was needed to prove his theory of the case: that the complainant first had a sexual encounter at the bar, then she had consensual sex with Petitioner, and after that she went to her ex-boyfriend's home "for more sex." (*Id.*) Petitioner does not cite to the United States Constitution or any federal cases to support his claim. Respondent argues that this claim should be rejected because the trial court allowed testimony that there was semen on the complainant's arm and because Petitioner's related claims do not raise a constitutional claim or provide a basis for habeas relief. (Resp't Opp'n 13–14, 19.)

"Rape shield laws have been enacted by Congress and the majority of states." *Portuondo v. Agard*, 117 F.3d 696, 702 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000). "Insofar as rape shield laws are concerned, the Supreme Court has recognized that they express the States' legitimate interest in giving rape victims 'heightened protection against surprise, harassment, and unnecessary invasion of privacy.'" *People v. Williams*, 81 N.Y.2d 303, 313 (1993) (quoting *Michigan v. Lucas*, 500 U.S. 145, 150 (1991)). The relevant section of New York's rape shield law, which provides for an "interest of justice exception," states:

> Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense

26

> defined in article one hundred thirty of the penal law unless such
> evidence: . . . (5) is determined by the court after an offer of proof
> by the accused outside the hearing of the jury, or such hearing as the
> court may require, and a statement by the court of its findings of fact
> essential to its determination, to be relevant and admissible in the
> interests of justice.

N.Y. Crim. Proc. Law § 60.42; *see also People v. Jovanovic*, 700 N.Y.S.2d 156, 205 (App. Div.

1999) (stating that the "interests of justice" exception to the rape shield law "was included in

order to give courts discretion to admit what was otherwise excludable under the

statute . . . where it is determined that the evidence is relevant").

The purpose of New York's rape shield law is to prohibit cross-examination about a

complainant's sex life. *See, e.g.*, *Agard*, 117 F.3d at 703 ("Rape shield laws serve the broad

purpose of protecting the victims of rape from harassment and embarrassment in court, and by

doing so seek to lessen women's historical unwillingness to report these crimes."); *see also*

Congressional debate of the Privacy Protection for Rape Victims Act of 1978, H.R. 4272,

124 Cong. Rec. H11944 (daily ed. Oct. 10, 1978) (statement of Rep. Holtzman) ("[V]ictims of

rape are humiliated and harassed when they report and prosecute the rape. . . .  [M]any find the

trial almost as degrading as the rape itself.  Since rape trials become inquisitions into the victim's

morality . . . it is not surprising that it is the least reported crime.").  The rape shield laws also

serve to "reinforce the trial judge's traditional power to keep inflammatory and distracting

evidence from the jury." *Agard*, 117 F.3d at 703 (citing *Sandoval v. Acevedo*, 996 F.2d 145,

148–49 (7th Cir. 1993)).

On appeal, Petitioner argued that the trial court improperly applied New York's rape

shield law by (1) barring cross-examination of the complainant regarding her prior sexual

conduct and (2) redacting the complainant's medical records to remove all references to her

27

sexual history and denying Petitioner's request for unredacted records "even after evidence disclosed that another man's semen was found on [the] complainant's arm." (Pet'r State Br. 36–46.) The Appellate Division found that the trial court properly exercised its discretion in precluding cross-examination of the complainant concerning her sexual history with her boyfriend and held that all of Petitioner's remaining contentions were either without merit or did not require reversal. *Jamison I*, 857 N.Y.S.2d at 624.

Erroneous evidentiary rulings are only cognizable on habeas review if they are of constitutional magnitude and the constitutional error was not harmless. *Perez*, 210 F. App'x at 61. In order to be of constitutional magnitude, the evidentiary ruling must be an error of state law and have deprived the petitioner of a fundamentally fair trial. *Freeman*, 684 F.3d at 35; *Perez*, 210 F. App'x at 57. It is not the province of a federal court sitting in habeas review to determine if "in exercising discretion, it would have allowed this evidence if it were the trial judge, nor whether the trial judge abused his discretion as a matter of state law in excluding evidence." *Grant v. Demskie*, 75 F. Supp. 2d 201, 221 (S.D.N.Y. 1999) ("A habeas court is not an appeals court to review state trial court errors unless they are of constitutional dimension."); *see generally Estelle*, 502 U.S. at 68 (1991).

To determine if the challenged holdings regarding New York's rape shield law rendered the trial fundamentally unfair, "[t]he only question is whether the trial court's exclusion ruling was 'arbitrary or disproportionate to the purposes' to be served by rape shield policies, so as to constitute constitutional error." *Grant*, 75 F. Supp. 2d at 221 (quoting *Agard*, 117 F.3d at 703); *see also Zarvela*, 364 F.3d at 418 ("Even erroneous evidentiary rulings warrant a writ of habeas

corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair trial.*'" (alteration in original) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988))).

Petitioner fails to demonstrate that his trial was rendered "fundamentally unfair" by the trial court's limitation of evidence under New York's rape shield law regarding the complainant's sexual history, (Tr. 1194, 1197–98, 1242–44), or the semen found on the day of the incident on the complainant's arm, (Tr. 1268, 1273–74, 1337–38, 1344–46). The trial court's exclusion of questions on cross-examination regarding the frequency with which the complainant had sex with her former boyfriend and redaction of the complainant's sexual history from her medical records comports with the purpose of the rape shield law. *See generally Williams*, 81 N.Y.2d at 312; N.Y. Crim. Proc. Law § 60.48 practice commentaries. It has been routinely held that a complainant's willingness to engage in sexual conduct with one person around the time of the incident in question is not indicative of a concomitant desire to consent to such behavior with another. *People v. Terence McCray*, 958 N.Y.S.2d 511, 520 (App. Div. 2013) (trial court properly limited the scope of the cross-examination of the victim where "all references to the victim's 'hypersexuality' in her medical history are to her wholly voluntary inappropriate, promiscuous behavior — conduct intentionally designed to shock and draw attention — which is precisely the kind of evidence the rape shield law prohibits"); *People v. Simonetta*, 942 N.Y.S.2d 270, 274 (App. Div. 2012); *People v. McLaurin*, 815 N.Y.S.2d 369, 370 (App. Div. 2006); *People v. Grantier*, 743 N.Y.S.2d 768, 768–69 (App. Div. 2002).

Likewise, the trial court's refusal to allow the complainant's sexual history to be included in the medical records introduced at trial because another man's semen was found on the complainant's arm was well within the trial court's discretion. Speculation regarding consensual

sex with one man is irrelevant to the issue of whether her sexual relations with Petitioner were consensual, would serve only to impugn the chastity of the complainant, and is the type of inference that New York's rape shield statute precludes. *People v. Tohom*, 969 N.Y.S.2d 123, 138 (App. Div. 2013) (holding that the defendant's offer of proof that the complainant became pregnant by someone other than him was based on pure speculation and, therefore, was insufficient to overcome the presumption that such evidence should be precluded pursuant to the rape-shield law); *People v. Wieners*, 821 N.Y.S.2d 658, 659 (App. Div. 2006) (holding that the defendant's speculation as to source of semen stain found on complainant's underwear that did not belong to him was insufficient to overcome exclusion of evidence of semen stain pursuant to rape shield law).

The trial court's exclusion of this evidence was not of a constitutional magnitude that deprived Petitioner of a fair trial. The constitutional rights of an accused to confront the witnesses against him and to offer the testimony of favorable witnesses are essential to the due process right to a fair trial, but these rights are not absolute, and they may, in appropriate circumstances, yield to competing interests. The rape shield law is one such example of a trial court's authority to impose reasonable limits on cross-examination. In this case, it cannot be said that the trial court's decision to exclude evidence of the complainant's sexual conduct was arbitrary or disproportionate to the purposes to be served by rape shield policies so as to violate Petitioner's constitutional rights. *See McLaurin*, 815 N.Y.S.2d at 370 (finding that the trial court did not abuse its discretion in precluding evidence of a sexual encounter between the victim and another man earlier on the night of the crimes at issue); *Grantier*, 743 N.Y.S.2d at 768–69

(same). Thus, the state court's decision regarding the application of New York's rape shield law was not contrary to or an unreasonable application of clearly established federal law.

### ii. "Prompt outcry" evidence

Petitioner also challenges the trial court's admission of evidence under the prompt outcry exception to the rule against hearsay. Under New York law, evidence that the complainant of a sexual assault promptly complained of the crime is admissible as an exception to the hearsay rule. *People v. Rice*, 75 N.Y.2d 929, 931 (1990). However, the exception allows the witness to whom the complainant made the complaint to testify only as to the fact that the complaint was made, without repeating the details of the complaint. *Id.* at 932; *People v. Rosario*, 17 N.Y.3d 501, 511 (2011) (holding that evidence of a prompt outcry can be admitted but that "only the fact of a complaint, not its accompanying details, may be elicited") (internal quotation marks omitted); *People v. McDaniel*, 81 N.Y.2d 10, 17 (1993) ("The prompt outcry rule — an exception to the inadmissibility of the prior consistent statements of an unimpeached witness — permits evidence that a timely complaint was made, but does not allow further testimony as to the details of the incident."). "A complaint is timely for purposes of the prompt outcry exception if made at the first suitable opportunity." *McDaniel*, 81 N.Y.2d at 17 (citations and internal quotation marks omitted).

The prosecution elicited the testimony of two witnesses — Galvin and Gonzalez — to show that the complainant promptly complained of the rape. Each testified that the complainant told them the same day as the rape and after she had been released from the hospital that "she got raped." (Tr. 791, 800, 842.) When Petitioner objected to the introduction of the testimony, the trial court found that the complainant's outcry to her friends, which was within twenty-four

hours of the incident, was sufficiently prompt to be admissible. (Tr. 758–60 ("I don't think it's unreasonable to have told somebody within a twenty four hour period.").) These same witnesses, and the complainant, testified as to the content of an audio recording on the complainant's phone that had inadvertently captured the attack. (Tr. 689, 716–18, 781–83.) They testified that the recording, which was erased when the complainant's father discontinued service to the cell phone, included the complainant saying "stop" or "no" and the sounds of punching. (Tr. 689–90, 781–83, 797, 843–44, 851.) As to the detail provided by Gonzalez's and Galvan's testimony regarding the contents of the erased audiotape, the trial court permitted it because Petitioner had "opened the door" to inquiry about the recording by his cross-examination of the complainant in which he sought to show that she had fabricated the contents of the message, (Tr. 717 ("So we have your testimony, your word alone, that that in fact happened, is that right?")), not under the prompt outcry rule. (Tr. 768–70, 771 ("You asked her about it. You opened the door. It's on the record. You can't say nobody else can testify to it.").)

On appeal, the Appellate Division did not specifically discuss Petitioner's claim that the admission of the outcry witnesses' testimony was improper, but held that all of Petitioner's remaining claims were either without merit or did not require reversal. This is a determination as to the merits to which AEDPA deference is owed. *Watson v. Greene*, 640 F.3d 501, 508 n.7 (2d Cir. 2011) ("Although the Appellate Division did not discuss its reasons for rejecting Watson's Confrontation Clause claim, it held that the claim was 'either . . . unpreserved for appellate review, without merit, or [did] not require reversal.' That holding constitutes a decision 'on the merits' that is entitled to AEDPA deference." (alterations in original) (citations omitted)); *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (The Appellate Division's

32

holding that a claim was "either unpreserved for appellate review or without merit" is a determination on the merits requiring AEDPA deference.).

Petitioner has failed to show that the trial court's admission of the witnesses' testimony violated his rights. The complainant spoke with each of the two outcry witnesses within twenty-four hours of the assault. *See McDaniel*, 81 N.Y.2d at 17–18 (stating that "there is no iron rule" to what constitutes "the first suitable opportunity"); *People v. Jackson*, 8 N.Y.3d 869, 870 (2007) (finding that a complaint about the attack the morning after the rape occurred qualified as prompt outcry). They properly testified at trial only as to the fact that their friend complained of the rape to them on the day that it occurred; they did not repeat the details of her complaint. *People v. Rosario*, 17 N.Y.3d at 511.

As to the testimony about the recording of the attack, that testimony was not admitted under the prompt outcry rule and it was within the trial court's discretion to admit their testimony. A trial court has the discretion to decide "door opening" issues "by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression." *People v. Massie*, 2 N.Y.3d 179, 184 (2004).

However, even if the trial court had erred in admitting the testimony under New York state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–78. Rather, this Court's role is to assess whether the erroneous admission under New York state law "deprived the petitioner of his due process rights to a 'fundamentally fair trial.'" *Freeman*, 984 F.3d at 35. Or, stated another way,

was the admission of the evidence "sufficiently material to provide the basis for conviction or to

remove a reasonable doubt" that otherwise existed?  *McKinnon*, 422 F. App'x at 73.

On the instant record, Petitioner has not demonstrated that he would have been acquitted

but for the admission of the prompt outcry testimony.  *Zarvela*, 364 F.3d at 418; *Kirkby v. Filion*,

644 F. Supp. 2d 299, 308–09 (W.D.N.Y. 2009) (finding that erroneous admission of testimony

by victim's mother under "prompt outcry" exception did not render petitioner's trial

fundamentally unfair); *People v. Terrence*, 612 N.Y.S.2d 571, 572 (App. Div. 1994) (finding that

while prompt-outcry exception ideally might have omitted the complainant's report that she had

been beaten and verbally abused in addition to having been sodomized and raped, such limited

detail did not unduly prejudice defendant, as witness had previously described his observation of

the complainant's physical condition, and photographs of her bruises had previously been

entered into evidence).  Petitioner fails to demonstrate that had this evidence been excluded, he

would have been vindicated.  *See Rice*, 75 N.Y.2d at 932  (finding that, although it was error to

admit testimony about description of rapist given to police by victim, reversal was unnecessary

because there was no significant probability that the erroneously admitted testimony contributed

to jury's verdict.); *People v. Herring*, 641 N.Y.S.2d 649, 651 (App. Div. 1996) (finding that any

error in admission of testimony that exceeded scope of prompt-outcry exception was harmless in

light of victim's testimony and defendant's incriminating statements); *People v. Roberts*, 602

N.Y.S.2d 475, 475 (App. Div. 1993) (finding that erroneous admission of testimony from

victim's boyfriend and a police officer regarding details of victim's complaints did not warrant

reversal because there was no significant probability that defendant would have been acquitted

but for admission of that evidence).

Moreover, to the extent that Petitioner may be raising an argument under the Sixth Amendment, the outcry testimony does not implicate the Confrontation Clause. The complainant testified at trial, affording Petitioner an opportunity to cross-examine her about her statements. *See, e.g.*, *Grant v. Bradt*, No. 10-CV-0394, 2011 WL 8897634, at *11 (S.D.N.Y. July 8, 2011) ("[W]here the hearsay declarant testifies at trial and is subject to cross-examination, 'the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.'" (quoting *United States v. Owens*, 484 U.S. 554, 560 (1988)), *report and recommendation adopted*, No. 10-CV-0394, 2012 WL 3764548 (S.D.N.Y. Aug. 30, 2012))).

Finally, even if the testimony exceeded the scope of the prompt-outcry exception, it was merely cumulative of the complainant's own testimony. *See People v. Randall*, 641 N.Y.S.2d 639, 640 (1996) (stating that to the extent the witness' testimony revealed limited details of sexual assault, such as number of perpetrators and that it occurred at gunpoint, testimony merely repeated victim's testimony on these points, and was therefore harmless); *Roberts*, 602 N.Y.S.2d at 475 (finding that erroneously admitted testimony was cumulative of properly admitted evidence). The complainant testified to the content of the recording during her cross-examination. It was Petitioner's trial counsel who inquired into the content of the recording, when the complainant heard it and whom she told about it: her answer was Gonzalez, Galvan and others. (Tr. 689–91, 716–18.) Gonzalez and Galvan did not add any details that the complainant had not provided herself. Although the testimony about the contents of the audiotape may have bolstered the complainant's testimony, Petitioner fails to demonstrate that the verdict would have been different but for the allegedly erroneously admitted testimony. Both

the complainant and Petitioner testified at trial, and there is no reason to conclude that the outcry witnesses' testimony played any substantial role in the jury's assessment of the credibility of the complainant and Petitioner. In sum, even if the state court erred, it did not render Petitioner's trial "fundamentally unfair." *Kuhlman*, 839 F.2d at 924–25; *Taylor v. Curry*, 708 F.2d at 891. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

### iii. Good character evidence

Applying the same standard to Petitioner's claim that the state court erred in omitting evidence of Petitioner's good character, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

Petitioner claims that the trial court erred in excluding his wife's testimony as to his good character. Petitioner's trial counsel sought to show that Petitioner and his wife had a sexual relationship. The People's objections to the questions "[h]ow would you describe your sex life with Mr. Jamison?" and "do you have a sex life with your husband?" were sustained and her answer of "Yes" to the latter question was stricken. (Tr. 1387). After argument on the admissibility of the evidence, (Tr. 1387–97), during which Petitioner's counsel argued that a sexual relationship with one's spouse would make one less likely to commit the crime of rape in the same way that a wealthy person would be less likely to commit a robbery, the trial court excluded Petitioner's wife's testimony regarding their sexual relationship on the ground that it was irrelevant, (Tr. 1397–98).

As discussed above, the Appellate Division did not specifically discuss Petitioner's claim that the exclusion of the character evidence was improper, but held that all of Petitioner's

remaining claims were either without merit or did not require reversal. *Jamison*, 857 N.Y.S.2d at 623. This determination is entitled to AEDPA deference. *Watson*, 640 F.3d at 508 n.7; *Jimenez*, 458 F.3d at 146.

Applying AEDPA deference, the Court finds that the state court ruling was not contrary to or an unreasonable application of clearly established federal law. As discussed above, evidentiary rulings, even if erroneous, are matters of state law, not federal constitutional law — and only errors of the latter type are cognizable on habeas review. *See Crispino v. Allard*, 378 F. Supp. 2d 393, 408 (S.D.N.Y. 2005) ("[I]t is well established that the mere fact that a state court made evidentiary errors, without more, does not provide a basis for habeas relief." (citing *Estelle*, 502 U.S. at 72)). Even assuming the state trial judge erred in excluding this character evidence that Petitioner sought to introduce, any such error did not rise to a level of violation of his constitutional right to present his defense. Petitioner admitted to hitting the complainant and having sexual intercourse with her; evidence of Petitioner's guilt was overwhelming. *Howard v. McGinnis*, 632 F. Supp. 2d 253, 270 (W.D.N.Y. 2009) (assuming state trial court erred in excluding evidence but denying habeas relief from child abuse conviction because evidence of the petitioner's guilt was overwhelming where the petitioner admitted to striking the child on his naked body with an electrical extension cord, albeit "less than ten times," and hitting him with a plastic baseball bat).

Petitioner fails to demonstrate that the exclusion of his wife's testimony deprived him of a fundamentally fair trial. As the trial court noted, evidence of Petitioner's sexual relationship with his wife would have had limited probative value in light of Petitioner's admission that he had sexual intercourse with the complainant on the night in question. "[T]he omitted evidence

evaluated in the context of the entire record does not create a reasonable doubt that did not otherwise exist." *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006). Accordingly, the state court's decision on this claim was not contrary to or an unreasonable application of clearly established federal law.

### e. Witness coaching

Petitioner claims that the trial court erred by permitting the complainant to testify after she was "coached" by a friend during a break in cross-examination. (Pet. 9; Tr. 536–38.) Once back in session but outside the hearing of the jury, Petitioner's trial counsel informed the trial court that someone from his office overheard the complainant and a friend discussing the complainant's testimony and overheard the friend making suggestions as to the complainant's testimony. The court reserved decision on whether to hold a hearing until after the cross-examination was completed. (Tr. 538.) When questioning resumed, trial counsel asked the complainant if, during the break, anyone had suggested how she should testify. (Tr. 539.) She stated that they had discussed what was going on and "[t]hey just said tell the truth." (Tr. 539–40.) Respondent argues that the complainant testified that she had been told to tell the truth, not coached, and the claim does not "raise an issue of constitutional dimension" even if the claim is construed as one alleging that the trial court failed to hold a hearing regarding whether the complainant was coached. (Resp't Opp'n 33.)

The Court agrees with Respondent. As with the trial court's evidentiary rulings, this Court's duty is not to second guess the trial court's decision regarding trial management. The Court's only role is to determine if Petitioner's constitutional rights to a fair trial, to confront witnesses, and to present a defense were violated. The decision to continue the testimony of the

38

complainant after she had been overheard having a conversation with another witness was within the discretion of the trial court under New York law and will not be second-guessed by this Court. *See generally People v. Branch*, 83 N.Y.2d 663, 666–67 (1994) ("[T]he decision to grant a recess and to allow a conference between a lawyer and a testifying witness falls within the broad discretion allowed a trial court in its management of a trial."). The trial court questioned the complainant regarding the overheard conversation and was satisfied that the friend only told the complainant to "tell the truth," but did not tell her what to say. This exercise of discretion was not an error since it was within the broad discretion allowed to a trial court in its management of a trial. *See People v. Nayyar*, 772 N.Y.S.2d 1, 1 (App. Div. 2004) ("The court properly exercised its discretion in permitting the prosecutor and the five-year-old victim's foster mother to have a private conversation with the victim in the middle of her testimony."); *People v. Guiterrez*, 707 N.Y.S.2d 7, 8 (App. Div. 2000) (affirming that trial court properly exercised its discretion in allowing the complainant to be recalled in order to make an in-court identification); *People v. Young*, 698 N.Y.S.2d 643, 645 (App. Div. 1999) (affirming that trial court properly exercised its discretion in permitting witness to be recalled to the stand in order to state that fear of an unknown spectator resulted in her conflicting testimony); *People v. Smith*, 659 N.Y.S.2d 534, 535 (App. Div. 1997) (affirming that the trial court did not abuse its discretion in allowing the People to confer with eyewitness to murder following his initial false testimony). The trial court's decision does not rise to the level of a constitutional error sufficient to grant habeas corpus relief. Applying AEDPA deference, the Court finds that the state court ruling was neither contrary to nor an unreasonable application of clearly established federal law.

### f. Batson challenge

Petitioner's final claim is that the prosecution's challenge to the only African-American male jury panelist violated *Batson*. (Pet. 5–9, 21–22.) This claim is procedurally barred and is without merit.

A state prisoner seeking federal habeas review must first exhaust available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Cullen*, 563 U.S. at 182 ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (citation and internal quotation marks omitted).

Unlike the other claims in this petition, this claim was not raised in Petitioner's state court appeal. Rather, it was raised in his writ of error *coram nobis* that his appellate counsel provided ineffective assistance to him. *Jamison*, 885 N.Y.S.2d at 428. Although Petitioner argued in his *coram nobis* papers that his appellate counsel was ineffective for failing to raise the *Batson* claim, the Appellate Division's consideration served to exhaust only the ineffective assistance of appellate counsel claim, not the *Batson* claim. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (finding claims of error at the trial level unexhausted when presented in a writ of error *coram nobis* because "the writ of error *coram nobis* lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel" (alteration in original) (quoting *People v. Gordon*, 584 N.Y.S.2d 318, 318 (App. Div. 1992))); *see also Daye v. Attorney General of N.Y.*, 696 F.2d

186, 191 (2d Cir. 1982) ("The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court.").  Thus, Petitioner's *Batson* claim is unexhausted.

Moreover, Petitioner can no longer raise this claim in state court.  Petitioner has completed his direct appeal and there is no other available route for raising this claim.  New York State law permits only one direct appeal of a conviction to the Appellate Division.  *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (stating that a criminal defendant is "entitled to one (and only one) appeal to the Appellate Division").  While New York State law provides for collateral review of a conviction under Criminal Procedure Law section 440.10, such review is not available if the claim could have been raised (or was actually decided) on direct review.  *See* N.Y. Crim. Proc. Law § 440.10(2)(a), (c).  Because it cannot still be raised, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Petitioner can overcome this procedural bar only if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750; *see also House*, 547 U.S. at 536.  Petitioner has not shown cause for the default or that he was prejudiced, or a fundamental miscarriage of justice.  Thus, Petitioner's *Batson* claim is procedurally barred and beyond the scope of federal habeas review.

Even if the Court were to examine this procedurally barred claim on its merits,[8] Petitioner has not shown, and the Court cannot find on this record, evidence that the prosecution's proffered reason for its peremptory challenge of the only African-American male jury panelist was pretextual and discriminatory.[9] (*See* Tr. 120–23). It is well-settled that the best evidence for credibility determinations is "the judge's observations of the attorneys and prospective jurors." *Galarza v. Keane*, 252 F.3d 630, 635 (2d Cir. 2011); *see also*, *Hernandez v. New York*, 500 U.S. 352, 364–65 (1991). There is a sufficient basis in the record to support the trial judge's finding that the prosecutor's facially neutral reasons were credible. Therefore, even on the merits, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

---

[8] Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (citations and internal quotation marks omitted)).

[9] In *Batson*, the Supreme Court fashioned a three-part burden-shifting framework that trial courts are to employ to ascertain whether a particular peremptory strike of a jury panelist is based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 96–98. Initially, when objecting that a peremptory strike has been exercised in an unlawfully discriminatory manner, the movant must make a prima facie showing of circumstances that give rise to an inference that the relevant panelist was stricken on improper grounds. *Id.* at 96–97. If the trial court is satisfied that the movant has made the requisite prima facie showing, the non-movant must then proffer a race-neutral explanation for striking the panelist. *Id.* This race-neutral explanation need not be "persuasive, or even plausible" for the non-movant to meet his obligation at step two of the *Batson* procedure and thereby advance the inquiry to the third step. Once the non-movant has proffered his race-neutral explanation, the trial court must then determine whether the movant has satisfied his burden of proving that the relevant strike was exercised for discriminatory reasons. *Id.* at 98. This third step "requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000) (citation and internal quotation marks omitted). The burden on a *Batson* challenge of proving that a strike was exercised in an impermissible discriminatory way remains with the movant. *See McKinney v. Artuz*, 326 F.3d 87, 98 (2d Cir. 2003).

**III. Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is denied. No certificate of appealability shall be issued. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: December 14, 2015
       Brooklyn, New York